27537. MATHIS *v.* DALTON AUTO & MACHINERY CO.

DECIDED OCTOBER 17, 1939.

*D. W. Mitchell,* for plaintiff. *R. Carter Pittman,* for defendant.

BROYLES, C. J. R. L. Mathis sued the Dalton Auto & Machinery Company to recover the difference between the balance due by him on the purchase-price of a Chevrolet automobile truck and the net proceeds of the sale thereof under the provisions of a retention-of-title contract. At the conclusion of the evidence the court directed a verdict against the defendant for $68, and the plaintiff excepted.

The retention-of-title contract, entered into between the plaintiff and the defendant on March 14, 1936, fixes the selling price of the truck at $924.73; recites that $296.29 of that sum is payable "on or before delivery," and that the balance of the purchase-price of the truck, amounting to $628.44, is "payable at the office of General Motors Acceptance Corporation," in instalments of $52.73, "on the same day of each successive month, . . commencing May 1, 1936," and provides that "interest is due on instalments after maturity at the highest lawful contract rate," and that "the final instalment payable hereunder shall equal the amount of the deferred balance remaining due." The contract further provides: "Title to said property shall not pass to purchaser until said amount is fully paid in cash. . . Time is of the essence of

this contract; and if purchaser default in complying with the terms hereof, . . seller . . may take immediate possession of said property; . . seller may resell said property . . at public or private sale . . upon such terms and in such manner as seller may determine. . . From proceeds of any such sale seller shall deduct all expenses for retaking, repairing, and selling such property. . . The balance thereof shall be applied to amount due; any surplus shall be paid over to purchaser; in case of deficiency, purchaser shall pay the same with interest."

Attached to the contract is a writing whereby the defendant sells, assigns, and transfers "to the General Motors Acceptance Corporation . . its . . title and interest in and to the within contract . . and the property covered thereby, and authorizes said . . corporation to do every act and thing necessary to collect and discharge the same." In this writing the defendant "covenants, if default be made in payment of any instalment herein, to pay the full amount then unpaid to General Motors Acceptance Corporation upon demand." It appears from the agreed statement of facts that the plaintiff and the defendant agreed that the selling price of the Chevrolet truck was $924.73; that "the down-payment was $296.29, leaving a deferred balance of $628.44, payable in instalments of $52.37 per month, commencing May 1, 1936;" that "the monthly payments were made up until the payment falling due on November 1, 1936, and that there were defaults in the payments due in November and December, 1936;" that "in the early part of December, 1936, Mr. Landers, an agent of the G. M. A. C., repossessed said truck and brought it to Dalton Auto & Machinery Company with instructions for them to hold the truck until December 15, 1936;" that after the truck had been held until that date, "the G. M. A. C. declared the truck a permanent repossession, and demanded of the defendant payment of the balance due on the note;" that defendant paid said balance "in the amount of $334.88" to General Motors Acceptance Corporation; that defendant then "made repairs and reconditioned the truck at an . . expense of $25, and incurred an additional expense of $25 in salesman's commissions in the sale of said . . truck to Mrs. Leona Williams;" that "the truck so repossessed was sold to Mrs. Leona Williams on December 16, 1936, for a total price of $535, which sale price of $535 was paid by the following

items: 1 1934-model 1-1/2-ton truck . . at a value of $185, and a note payable six months after date for $350;" and that "thereafter, on January 5, 1937, the truck received by Dalton Auto & Machinery Company from Mrs. Leona Williams . . was sold by Dalton Auto & Machinery Company to Ed Painter, . . without change in its condition, for . . $20."

In the following discussion of this case R. L. Mathis will be referred to as "plaintiff," and Dalton Auto & Machinery Company as "defendant." In the amendment to his motion for new trial "movant insists" that the court "erred in directing a verdict for the movant in the sum of $68, because under the pleadings and the evidence the jury would have been authorized to have returned a verdict in favor of the movant for . . $150.12;" and that "a verdict should have been directed for movant for . . $150.12 instead of . . for $68." The plaintiff's method of calculation is this: Take $535 as the selling price of the Chevrolet truck, and deduct therefrom $50, the expense of repairing, reconditioning, and selling the truck; and subtract from the remainder of $485 the sum of $334.88, the balance due on the purchase-price of the truck. The result, of course, is $150.12. In its answer the defendant averred that the plaintiff owed it $14.88, and prayed for a judgment in that amount, its method of calculation being as follows: Add $350 (the amount of the Williams note) to $20 (the sum for which the 1-1/2-ton truck was sold), deduct from the result ($370) the expense incurred in repairing and disposing of the Chevrolet truck ($50), and subtract the remainder of $320 from $334.88, the balance due on the purchase-price of the Chevrolet truck. The answer is, of course, $14.88. The basic difference between the parties to the instant case is as to the amount of the net proceeds from the resale of the Chevrolet truck. Unquestionably the retention-of-title contract evidences the *sale* of property, and the power of sale therein gives the seller the right to *resell* it. The contract provides that "from proceeds of any such sale seller shall deduct all expense for retaking, repairing, and selling such property;" that "the balance shall be applied to amount due;" that "any surplus . . be paid over to purchaser;" and that "in case of deficiency purchaser shall pay the same with interest."

A sale has been defined as "a transfer of the *absolute* or *general*

property in a thing for a price in money." Benjamin on Sales (6th ed.) 2. "*Sale* is commonly, and with increasing strictness, limited to the transfer of property for money, or for something estimated at a money value or considered as equivalent to so much money." Funk & Wagnalls New Standard Dictionary. Our view is that the contract in the instant case should be construed as giving the defendant only the right to dispose of the Chevrolet truck "for money, or for something estimated at a money value." If this be not true, what would be deemed the "proceeds of . . such sale" from which "all expenses for retaking, repairing, and selling such property" could be deducted, in order to determine the "balance thereof" to "be applied to the amount due"? Indeed, it appears from the agreed statement of facts the parties themselves viewed the defendant's rights under the power of sale in the retention-of-title contract in this light; for they agreed that "the truck . . was sold . . for a total price of $535," and that it was paid for with a $350 note and another truck valued at $185. Conceding, as we must, that the Chevrolet truck was disposed of precisely as the litigants agree it was, we can not accept the defendant's view that the subsequent sale for $20 of the truck that had been taken at the fixed value of $185 made its value $20, in determining the total consideration for the sale of the Chevrolet truck. Certainly its right under the retention-of-title contract to resell the Chevrolet truck "upon such terms and in such manner" as it might determine does not support the defendant's view in this regard. Furthermore, even if the contract could be construed as allowing the defendant to accept the 1-½-ton truck as a part of the consideration of the Chevrolet truck and fix the value of the latter by a subsequent private sale, surely this could not be done where, as here, both parties agree that in the sale of the Chevrolet truck the other truck was taken at a fixed valuation of $185.

In his petition the plaintiff asked for a judgment of $195, and consequently could have recovered a much larger sum than that of the directed verdict, if the evidence warranted such a recovery. Under the agreed statement of facts a larger verdict was permissible. It is certain that, however the evidence be viewed, it did not warrant the direction of a verdict for $68. It follows that the direction of the verdict was reversible error.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*